IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| v. | ) | 09-0644 |
| | ) | |
| FIRST UNITED SECURITY BANK, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

The United States of America alleges:

1. This action is brought by the United States to enforce the provisions of the Fair

Housing Act, 42 U.S.C. §§ 3601-3619, and the Equal Credit Opportunity Act, 15 U.S.C.

§§ 1691-1691f.

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1345, 42 U.S.C.

§ 3614, and 15 U.S.C. § 1691(h).  Venue is appropriate pursuant to 28 U.S.C. § 1391.

3. Defendant First United Security Bank (Bank) is a wholly-owned subsidiary of United

Security Bancshares, Inc., a Delaware bank holding company. The Bank's principal office is in

Thomasville, Alabama, and it does business primarily in the State of Alabama.

4. First United Security Bank was created in 1952 with five branches located in Clarke

and Bibb counties in Alabama.  The Bank currently operates nineteen banking offices in Clarke,

Choctaw, Bibb, Shelby and Tuscaloosa counties in Alabama.

5. The Bank offers the traditional services of a financial depository and lending

institution, including the receipt of monetary deposits and the financing of residential housing

and commercial loans. As of December 31, 2007, the Bank had assets totaling just over $658 million. The Bank is subject to the regulatory authority of the Federal Deposit Insurance Corporation (FDIC).

6. The Bank is subject to the federal laws governing fair lending, including the Fair Housing Act and the Equal Credit Opportunity Act and their respective implementing regulations, the fair housing regulations of the Department of Housing and Urban Development, 24 C.F.R. § 100.1, *et seq.,* and Regulation B of the Board of Governors of the Federal Reserve System, 12 C.F.R. § 202.1, *et seq.* The Fair Housing Act and the Equal Credit Opportunity Act prohibit financial institutions from discriminating on the basis of, *inter alia*, race and color in their home-mortgage lending practices.

7. In December 2005 the FDIC conducted a compliance examination of the Bank. Based on information gathered in its examination, the FDIC determined that it had reason to believe that in 2004 the Bank engaged in a pattern or practice of home-mortgage lending discrimination against black applicants, on the basis of race, in the pricing of conventional, first-lien refinance loans on owner-occupied, one-to-four family properties, in violation of the Equal Credit Opportunity Act, the Fair Housing Act, and their implementing regulations.

8. Pursuant to 15 U.S.C. §1691e(g), the FDIC referred the matter to the Attorney General on October 23, 2006, for appropriate enforcement action, following its determination as described in Paragraph 7.

9. Between at least January 2004 and December 2004, First United Security Bank loan officers did not use formal, written, uniform underwriting guidelines and procedures to set final interest rates for conventional, first-lien refinance loans on owner-occupied, one-to-four family

properties.  Loan officers were provided with standard rate sheets, but the Bank granted them broad discretion to engage in subjective decision-making and increase or decrease the rate up to one percentage point.

10.  During the relevant time period referenced in Paragraph 9, First United Security Bank charged African-American borrowers higher rates of interest for conventional, first-lien refinance loans on owner-occupied, one-to-four family properties than it charged to similarly-situated white borrowers.  The differences in the interest rates charged to African-American borrowers obtaining such refinance loans from the Bank and those charged to white borrowers cannot be explained fully by factors unrelated to race, such as differences in certain borrower and loan characteristics.  The estimated interest rate differences, approximately 62 basis points (5/8 of a percentage point) between similarly situated African-American and white borrowers, are statistically significant.

11.  As of December 31, 2007, First United Security Bank's Alabama market area included all of Clark, Choctaw, Bibb, Shelby, and Tuscaloosa counties and portions of Marengo, Sumter, Washington, Wilcox, Chilton, Hale, Monroe, Perry, and Jefferson counties, according to United Security Bancshares SEC Form 10K report.   That report does not specify which portions of the latter nine counties are included in the Bank's market area; therefore, in this Complaint, references to the "Alabama Market Area" include all of Clark, Choctaw, Bibb, Shelby, Tuscaloosa, Marengo, Sumter, Washington, Wilcox, Chilton, Hale, Monroe, Perry, and Jefferson counties.

12.  According to the 2000 Census, the Alabama Market Area consisted of 285 census tracts, of which 99 were majority black in population.   The Alabama Market Area also included

five counties that were majority black in population: Hale, Marengo, Perry, Sumter and Wilcox.
The total population of the Bank's Alabama Market Area was more than 1.2 million persons, of
whom 34.2% were African-American.

13.  In operating and expanding the scope of its business over time, First United Security
Bank has acted to meet the credit needs, particularly with respect to residential and small
business credit, of predominantly white residential counties and census tracts (counties and
census tracts with a population greater than 50% white) throughout the Alabama Market Area,
and has avoided serving the similar credit needs of majority-black census tracts.

14.  Over time, First United Security Bank has expanded its lending operations,
particularly for the extension of credit for residential real estate-related transactions and small
business purposes, to substantial portions of the Alabama Market Area, particularly in the
northern and southern parts of that area.   The Bank has both enlarged the geographic scope of
the area within which it extends such credit and constructed or acquired additional branch
offices, which are designed both to better serve existing customers and to attract new customers
for the Bank's services and products.

15.  First United Security Bank has engaged in a race-based pattern of locating or
acquiring branch offices.  It has located or acquired branch offices in a manner designed to serve
fully the banking and credit needs of the residents of, and small businesses located in, majority-
white counties and census tracts, but not those of residents of or businesses located in majority-
black counties or census tracts.

16.  By the end of the year 2006, First United Security Bank had 19 branch offices in the
Alabama Market Area.  Not one of those 19 branches was located either in a majority-black

census tract or anywhere in the five majority-black counties in the Bank's Alabama Market Area (Hale, Marengo, Perry, Sumter and Wilcox). See map attached as Exhibit 1. Upon information and belief, those branches provided the Bank's full range of banking and credit services to each community in which they were located.

17. The unlawful consideration of race in First United Security Bank's business practices is also evident from its customer solicitation efforts, including its advertising and marketing practices. For example, the Bank has for years directed its radio advertising to stations that target "general audiences", although radio stations with a format targeted toward black audiences exist in the Alabama Market Area. The Bank also has never advertised in black-owned print media, though such outlets exist in the Alabama Market Area.

18. The unlawful consideration of race in the business practices of the Bank is also evident from the community service, or assessment area, boundaries that First United Security Bank has established and maintained pursuant to the Community Reinvestment Act ("CRA"). Pursuant to statutory direction, the Federal Reserve Board has promulgated regulations to implement the CRA, 12 C.F.R. §228 ("Reg BB"). Under Reg BB, as amended in 1997, a bank's assessment area ordinarily will consist of one or more metropolitan areas or contiguous political subdivisions, §228.41(c), unless that area would be extremely large, of unusual configuration, or divided by significant geographic barriers, §228.41(d). Reg BB further provides that, if a bank's assessment area does not include entire political jurisdictions, its assessment area may not reflect illegal discrimination. §228.41(e).

19. First United Security Bank has long maintained three assessment areas, one of which is geographically separated from the other two. Each of the three assessment areas includes parts

of counties rather than entire political subdivisions, including parts of Marengo, Wilcox, Jefferson, and Tuscaloosa counties. The assessment areas exclude all of majority-black Hale, Perry, and Sumter counties; parts of majority-black Marengo and Wilcox counties; and all but one of the majority-black census tracts in the City of Tuscaloosa. The assessment areas also exclude the portion of Jefferson County that includes the City of Birmingham, which has numerous majority-black census tracts. See map attached as Exhibit 2. The inclusion of additional majority-black areas contiguous to the existing assessment areas would not have created assessment areas that were extremely large, of unusual configuration, or divided by significant geographic barriers, the only exceptions to inclusion of whole political jurisdictions that are specifically described by Reg BB.

20. The policies and practices of First United Security Bank, described in paragraphs 11-19 above, have served majority-white communities to a significantly greater extent than majority-black communities, as further demonstrated by the Bank's actual residential and CRA small business lending activity over time.

21. Statistical analyses of First United Security Bank's residential real estate-related loan applications and originations for 2004-2006 show that each year First United Security Bank has served the credit needs of the residents of majority-white census tracts of the Alabama Market Area to a significantly greater extent than it has served the residential real estate-related credit needs of the residents of majority-black census tracts in that Alabama Market Area.

22. From 2004-2006, First United Security Bank generated 1,563 single-family (defined by HMDA as dwellings with 1-4 units) residential loan applications in the Alabama Market Area that were required to be reported to its regulator pursuant to the Home Mortgage Disclosure Act

("HMDA"), 28 U.S.C. §§2801-2810.  Only 218, or 14%, were secured by residential property located in majority-minority census tracts.  See map attached as Exhibit 3.  Overall during that time period comparable lenders in Alabama Market Area (those reporting a majority of higher-priced loans under HMDA) received, in aggregate, approximately 31% of their applications from majority-black tracts.  This percentage figure is more than two times that of First United Security Bank, and the difference is statistically significant.

23.  The Bank's CRA small business loan originations for 2004-2006 show the same discriminatory pattern.  Of the 2,134 CRA small business loans First United Security Bank originated in the Alabama Market Area from 2004-2006, only 245 (11.5%) were made to businesses located in majority-black tracts.  See map attached as Exhibit 4.  In contrast, during 2004-2006, the aggregate of all lending institutions reported that 21% of their CRA small business loans in the Alabama Market Area were made to businesses located in majority-black census tracts.  This percentage figure is almost two times that of First United Security Bank, and the difference is statistically significant.

24.  The totality of First United Security Bank's policies and practices described in paragraphs 11-23 constitute the redlining of majority-black areas of the Alabama Market Area for the Defendant's lending business.  The Bank's policies and practices are intended to deny and discourage, or have the effect of denying or discouraging, an equal opportunity to the residents of and businesses located in the majority-black neighborhoods of this Alabama Market Area, on account of the racial composition of those neighborhoods, to obtain residential real estate-related and/or small business credit. These policies and practices are not justified by business necessity or legitimate business considerations.

- 7 -

25.  The Bank's actions as alleged herein constitute:

a.  Discrimination on the basis of race or color in making available, or in the terms or conditions of residential real estate-related transactions, in violation of the Fair Housing Act, 42 U.S.C. § 3605(a);

b.  The making unavailable or denial of dwellings to persons because of race or color in violation of the Fair Housing Act, 42 U.S.C. § 3604(a);

c.  Discrimination on the basis of race or color in the terms, conditions, or privileges of the provision of services or facilities in connection with the sale or rental of dwellings, in violation of the Fair Housing Act, 42 U.S.C. § 3604(b); and

d.  Discrimination against applicants with respect to credit transactions, on the basis of race or color, in violation of the Equal Credit Opportunity Act, 15 U.S.C. §1691(a)(1).

26.  The Bank's policies and practices as alleged herein constitute:

a.  A pattern or practice of resistance to the full enjoyment of rights secured by the Fair Housing Act, 42 U.S.C. §§3601 et seq., and the Equal Credit Opportunity Act, 15 U.S.C. §1691e(h); and

b.  A denial of rights granted by the Fair Housing Act to a group of persons that raises an issue of general public importance.

27.  Persons who have been victims of the defendant's discriminatory policies and practices are aggrieved persons as defined in 42 U.S.C. §3602(i) and as described in the Equal Credit Opportunity Act, 15 U.S.C. §1691(e)(i), and have suffered damages as a result of the defendant's conduct in violation of both the Fair Housing and the Equal Credit Opportunity Acts, as described herein.

- 8 -

28. The discriminatory policies and practices of the Bank have been intentional and willful, and implemented with reckless disregard for the rights of black borrowers.

WHEREFORE, the United States prays that the Court enter an ORDER that:

(1) Declares that the policies and practices of the Bank constitute a violation of the Fair Housing Act and the Equal Credit Opportunity Act;

(2) Enjoins the Bank, its agents, employees, and successors, and all other persons in active concert or participation with the Bank, from:

(A) Discriminating on account of race or color in any aspect of their lending business practices;

(B) Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Bank's unlawful practices to the position they would be in but for the discriminatory conduct;

(C) Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of the Bank's unlawful practices, and providing policies and procedures to ensure all segments of the Bank's market areas are served without regard to prohibited characteristics;

(3) Awards monetary damages to all the victims of the Bank's discriminatory policies and practices for the injuries caused by the Bank, pursuant to 42 U.S.C. § 3614(d)(1)(B) and 15 U.S.C. § 1691e(h); and

(4) Assesses a civil penalty against the Bank in an amount authorized by 42 U.S.C. § 3614(d)(1)(C), in order to vindicate the public interest.

- 9 -

The United States further prays for such additional relief as the interests of justice may require.

ERIC H. HOLDER, JR.
Attorney General

EUGENE A. SEIDEL
Acting United States Attorney

_____
GARY ALAN MOORE (MOORG6851)
Assistant United States Attorney
63 South Royal Street, Suite 600
Mobile, Alabama 36602
Telephone:    251-441-5845
Facsimile:    251-441-5051
gary.moore2@usdoj.gov

_____
LORETTA KING
Acting Assistant Attorney General
Civil Rights Division

_____
STEVEN H. ROSENBAUM
Chief, Housing & Civil Enforcement
Section

_____
DONNA M. MURPHY
Deputy Chief

_____
MARTA CAMPOS
Attorney
U.S. Department of Justice
Civil Rights Division
Housing & Civil Enforcement Section
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone:    202-514-4733
Facsimile:    202-514-1116
marta.campos@usdoj.gov